REVISED MARCH 26, 2010

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 25, 2010

Charles R. Fulbruge III
Clerk

No. 08-30914

KEVIN WILSON, Individually and on behalf of Ashunti Fobb,
Individually and on behalf of Ashily Wilson; PEGGY RENAE WILSON

Plaintiffs-Appellants

v.

BRUKS-KLOCKNER INC; BRUNETTE INDUSTRIES, INC; K H 2 A
ENGINEERING INC

Defendants-Appellees

Appeal from the United States District Court for the
Western District of Louisiana, Alexandria

Before REAVLEY, WIENER, and SOUTHWICK, Circuit Judges.

WIENER, Circuit Judge.

Plaintiffs-Appellants (1) Kevin Wilson, individually and on behalf of his children, and (2) Kevin Wilson's wife, Peggy Renae Wilson, (collectively "Plaintiffs"), all Louisiana residents, appeal the district court's order denying their motion for leave to amend their complaint that had been filed first in a state court of Louisiana against non-resident defendants and was then removed by the defendants to federal court on the basis of diversity of citizenship. Plaintiffs' motion to amend sought to add a non-diverse defendant, Reynolds

Industrial Contractors, Inc. ("Reynolds"), in place of a voluntarily dismissed diverse defendant, Pierce Construction Company ("Pierce"). If allowed, that amendment would have destroyed federal diversity jurisdiction. After permitting limited discovery, the district court denied Plaintiffs' motion to amend, holding, on the basis of a Louisiana statute of peremption,[1] that Plaintiffs could assert no colorable claim against Reynolds and thus should be denied leave to implead it at the cost of destroying subject matter jurisdiction. After the court designated its order as a final judgment, Plaintiffs appealed. We affirm.

## I. FACTS AND PROCEEDINGS

Late in May 2006, Plaintiff-Appellant Kevin Wilson, an employee of Martco Limited Partnership ("Martco"), was working inside a sheet metal building at Martco's Chopin, Louisiana plywood mill. His injury occurred when he caught his foot in a ten-ton wood chipping machine (the "wood chipper") that had been installed during the course of constructing that building, which Martco first occupied on February 15, 1996.

In May 2007, Plaintiffs brought the instant action in state court against Martco (subsequently dismissed under Louisiana's Workers Compensation exclusivity provision) and four construction-trade defendants that Plaintiffs alleged had participated in the 1996 construction of the building in which the wood chipper was installed, namely, Bruks-Klockner, Inc. and V. K. Brunette, Inc. as manufacturers of the wood chipper, KH2A as designer of the wood chipper, and Pierce as installer of the wood chipper. As all four remaining

---

[1] LA. REV. STAT. ANN. § 9:2772 (1996) (hereafter "9:2772").

defendants were non-residents of Louisiana, the case was removed to federal court.

When, during discovery following removal, Plaintiffs learned that Pierce had not installed the wood chipper and that Reynolds had, Plaintiffs voluntarily dismissed Pierce and filed their motion to implead the non-diverse Reynolds. Attached to that motion was a proposed "PLAINTIFF'S (sic) FIRST AMENDED COMPLAINT," which contained allegations that Reynolds's negligent acts which contributed to the cause of Wilson's injury included "(1) failure to properly install the chipper and any associated equipment; (2) failure to safely install the chipper and any associated equipment; (3) failure to warn about the dangers inherent in the use of the chipper and any associated equipment; (4) failure to pass on warnings about the chipper or any associated equipment; (5) any and all other acts of negligence which may be proved at the trial on the merits." These were essentially identical to the allegations that Plaintiffs had originally made against Pierce.[2]

The remaining defendants opposed that motion as constituting an improper joinder because the addition of Reynolds as a defendant would destroy diversity jurisdiction and lead to remand to state court. The diverse defendants

---

[2] In their state court complaint, Plaintiffs had charged the other three diverse defendants, Bruks-Klockner Inc., V. K. Brunette Inc., and KH2A, with "1. Failure to design and manufacture a safe product; 2. failure to warn about the dangers inherent in the use of their product; 3. failure to warn post-sale [of] a characteristic of their product that they knew to cause harm; 4. failure to place a safe product into the stream of commerce; and 5. any and all other acts of negligence which may be proved at the trial on the merit." Against Pierce, Plaintiffs had made no allegations regarding failures of design or manufacture but rather failure to install the wood chipper properly and safely; but Plaintiffs had alleged the same failure-to-warn and failure-to-pass-on-warnings against Pierce as they had alleged against the other three construction-industry defendants and that they would now allege against Reynolds in their proposed amended complaint.

contended that Plaintiffs could assert no colorable claim against Reynolds because its 1996 installation of the wood chipper during the course of construction of Martco's building had been completed more than ten years before the 2007 filing of the instant action. Therefore, asserted the defendants, Plaintiffs' action against Reynolds is barred by peremption under 9:2772 because it was not brought until well after the tenth anniversary of Martco's 1996 occupancy.

Section 9:2772 is entitled "Peremptive period for actions involving deficiencies in surveying, design, supervision, or construction of immovables or improvements thereon." The ten-year, 1996 version of 9:2772 that the district court applied states, in pertinent part:

> (A) No action, whether ex contractu, ex delicto, or otherwise, including, but not limited to an action for failure to warn, to recover on a contract or to recover damages shall be brought against any person ... performing or furnishing the design ... or the construction of an improvement to immovable property[3]

The district court determined that additional evidentiary submissions on peremption were required before it could rule on the motion, so it authorized further discovery. As the court had indicated that the issue of peremption, and thus Plaintiffs' motion to amend, turned on whether, under Louisiana law, the wood chipper itself was either (1) an immovable or (2) an improvement to immovable property, the parties filed, inter alia, competing expert opinions. The experts focused on the court's former alternative, i.e., whether the wood chipper

---

[3] Id. (emphasis added). The final phrase of paragraph (A) of the five-year, 2006 version reads "the construction of immovables, or improvement to immovable property." As for any distinction between the ten-year and five-year versions, the court and the parties appear to agree that, if applicable to Reynolds, the variance in the statutes' terms of years makes no difference here; and none addresses the differences in the wording of the two versions.

was itself an immovable. The defendants' witness noted that the wood chipper was "permanently attached" to Martco's sheet metal building by virtue of being hardwired to electrical power and bolted to structural elements of that building and could not "be removed without substantial damage to [itself] or to the immovable to which [it is] attached,"[4] thereby constituting a "component part" of the building (which, under Louisiana law, is an immovable, i.e., immovable property) and is itself therefore an immovable. The witnesses did not address whether the wood chipper was an "improvement to immovable property" pursuant to 9:2772.

When the district court ruled on the motion, it first noted that Reynolds, the party sought to be impleaded, is subject only to permissive joinder under Federal Rule of Civil Procedure 20 and that allowing joinder would destroy diversity. Consequently, acknowledged the court, its exercise of discretion to permit or deny joinder required it to conduct a balancing test pursuant to Hensgens v. Deere & Co.,[5] which instructs that in such cases, trial courts should consider

---

[4] LA. CIV. CODE ANN. art. 466 (1996). The court determined that the version of the article that was in force in 1996 is the one under which the test of the wood chipper as a component part of the factory building should be conducted. That version read:

> Things permanently attached to a building or other construction, such as plumbing, heating cooling, electrical or other installations, are its component parts.

> Things are considered permanently attached if they cannot be removed without substantial damage to themselves or to the immovable to which they are attached.

Id.

[5] 833 F.2d 1179 (5th Cir. 1987).

a number of factors to balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits. For example, the court should consider [1] the extent to which the purpose of the amendment is to defeat federal jurisdiction, [2] whether the plaintiff has been dilatory in asking for amendment, [3] whether plaintiff will be significantly injured if amendment is not allowed, and [4] any other factors bearing on the equities. The district court, with input from the defendant, should then balance the equities and decide whether amendment would be permitted. If it permits the amendment of the non-diverse defendant, it must remand to the state court. If the amendment is not allowed, the federal court maintains jurisdiction.[6]

When the district court addressed the Hensgens factors , it concluded that (1) the remaining diverse defendants have a significant interest in remaining in federal court, (2) Plaintiffs were not dilatory in seeking to add Reynolds as a defendant, having only learned of Reynolds's role in installing the wood chipper through discovery conducted after removal, and (3) being unable to determine the extent, if any, to which Plaintiffs' primary purpose was to defeat federal jurisdiction, the court would give Plaintiffs "the benefit of the doubt" that defeating such jurisdiction was not their sole purpose in adding Reynolds as a defendant. Therefore, deduced the district court, the determinative Hensgens factor in the instant balancing exercise was whether Plaintiffs would be significantly injured if they were not allowed to amend their complaint to add Reynolds as a defendant. The court observed that if Plaintiffs had no reasonable likelihood of success against Reynolds, they could not be significantly injured by the denial of their motion to amend. Thus, concluded the court, Plaintiffs' likelihood of success turned on whether their claims against Reynolds are time-

---

[6] Id. at 1182 (footnote and citations omitted).

barred; specifically, whether their claims are perempted under 9:2772. In that regard, the court stated that "the most important remaining issue in this case is whether or not the chipper is, in fact, [1] an immovable or [2] an [] improvement to an immovable under Section 2772."

In resolving that issue, however, the court effectively addressed only the first of its proclaimed alternatives, i.e., whether the wood chipper was itself an immovable — here, by virtue of its component-part status as a permanent attachment to the building (itself immovable property) in which it is installed. The court essentially ignored the alternative possibility, i.e., that Reynolds's acts in installing the wood chipper inside Martco's building constituted "performing or furnishing ... the construction of an improvement to immovable property" per 9:2772.

Ultimately, the court held that (1) pursuant to LCC art. 466, the wood chipper is a component part of the subject factory building; (2) the entire factory building, including its component parts, is an immovable; (3) as Plaintiffs brought this action more than ten years after Martco occupied that immovable, their claims against Reynolds are perempted under 9:2772; (4) Plaintiffs can therefore assert no colorable claim against Reynolds and thus would suffer no harm by the denial of their motion to amend, but that granting the motion to allow the joinder of Reynolds would destroy diversity; ergo (5) Plaintiffs' motion to amend their complaint should be (and was) denied. This appeal followed.

## II. STANDARD OF REVIEW

In general, we review a district court's denial of leave to amend for abuse of discretion.[7] When a plaintiff seeks to add a non-diverse defendant whose

---

[7] Whitmire v. Victus Ltd., 212 F.3d 885, 887 (5th Cir. 2000).

joinder would defeat federal jurisdiction, the district court must consider the Hensgens factors.[8] As a plaintiff will not be "significantly injured" by the denial of a clearly meritless claim, it is within the district court's discretion to deny the amendment as futile if there is no reasonable basis to predict that the plaintiff will be able to recover against the non-diverse, non-indispensable party sought to be added as a defendant.[9] When the district court's sole reason for denying such an amendment is futility, however, we must scrutinize that decision somewhat more closely, applying a de novo standard of review similar to that under which we review a dismissal under Rule 12(b)(6).[10]

## III. LAW AND ANALYSIS

Under Louisiana law, "[p]eremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period."[11] Unlike the doctrine of prescription, however, "[p]eremption may not be renounced, interrupted, or suspended."[12] The

---

[8] See supra note 5 and accompanying text.

[9] Id.

[10] Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 872-73 (5th Cir. 2000) (citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996) ("There is no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim.")). Importantly, this is not a case in which the district court concluded that Plaintiffs had sought to amend their complaint solely to defeat federal jurisdiction or had unduly delayed in seeking the amendment. As both the district court and the defendants acknowledge, Plaintiffs here timely sought to amend their complaint to identify the correct installer of the wood chipper. The district court's sole basis for denying leave to amend was futility.

[11] LA. CIV. CODE ANN. art. 3458 (2008).

[12] LA. CIV. CODE ANN. art. 3461 (2008).

district court applied the 1996 version of 9:2772,[13] which provided for a ten-year peremptory period barring any suits

> whether ex contractu, ex delicto, or otherwise, including but not limited to, an action for failure to warn, to recover on a contract or to recover damages ... against any person ... performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of an improvement to immovable property...[14]

As the parties agree that Reynolds's alleged acts in installing the wood chipper are the kinds of acts that are covered by the statute, the dispositive issue in this appeal is whether Reynolds's installing of the wood chipper in the metal building constituted "the construction of an improvement to immovable property."

Neither 9:2772 nor the Louisiana Civil Code defines the term "improvement." Nevertheless, proceeding on the assumption that the statute applies only to immovables and their component parts, the district court focused its analysis exclusively on whether the wood chipper is a "component part" of the factory building. After accepting limited discovery on the issue of preemption, the court concluded that the wood chipper is a component part of the building, as removing it would substantially damage the sheet metal building to which it is attached. Although we disagree with the district court's apparent assumption

---

[13] The parties disagree over which version of the statute the district court should have applied: the ten-year version that was in effect when Martco took possession of the wood chipper, or the five-year, amended version that was in place when Wilson was injured. For purposes of this appeal, however, we need not answer that question, as Plaintiffs did not file suit until more than ten years had passed since Martco took possession of the plywood factory. As we conclude that Plaintiffs' claims would be preempted under even the ten-year version of the statute, we need not determine whether the more restrictive five-year version of the statute applies.

[14] LA. REV. STAT. ANN. § 9:2772 (1996).

that 9:2772 applies only to immovables — and might well question whether the evidence was sufficient to show that the wood chipper is a component part of the factory — we are satisfied that the wood chipper undeniably is an improvement to the building and thus an "improvement to immovable property" within the intendment of 9:2772.

We begin our analysis by noting that, under the Louisiana Civil Code, the sources of law in Louisiana "are legislation and custom."[15] "In Louisiana, as in other civil law jurisdictions, legislation is superior to any other source of law."[16] "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."[17] In interpreting a statute that contains an ambiguous or undefined term, however, "the court must give the words of [the] law their generally prevailing meaning."[18] "When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole."[19]

Under Louisiana law, "[t]he starting point in interpreting any statute is the language of the statute itself."[20] By its plain terms, 9:2772 applies to

---

[15] LA. CIV. CODE ANN. art. 1 (2008).

[16] LA. CIV. CODE ANN. art. 1, Revision Comments (c) (2008).

[17] LA. CIV. CODE ANN. art. 9 (2008).

[18] Cleco Evangeline, LLC v. La. Tax Comm'n, 2001-2162, p. 5 (La. 4/3/02); 813 So. 2d 351, 354; see LA. CIV. CODE ANN. art. 11 (2008) ("The words of a law must be given their generally prevailing meaning.").

[19] LA. CIV. CODE ANN. art. 12 (2008).

[20] Hopkins v. Howard, 2005-0732, p. 8 (La. App. 4 Cir. 4/5/06); 930 So. 2d 999, 1005.

"improvements to immovable property." Although, as noted, neither the statute itself nor the Louisiana Civil Code defines the term "improvement," several courts, including the district court in the instant case, have interpreted the peremption statute — unduly narrowly, we conclude — as applying only to immovables.[21] These courts appear to have proceeded on the assumption that the term "improvements" refers only to "component parts." Other courts, however, have rejected this interpretation as inconsistent with the plain statutory language of 9:2772. For example, in Hebert v. Rapides Parish Police Jury, a state appellate court considered whether claims against the designer of a bridge were perempted under the statute.[22] As in the instant case, the primary issue before the court in Hebert was whether the bridge constituted an "improvement to immovable property."[23] Although the court concluded that the bridge was an improvement to immovable property, viz., to the tract of land on which it was constructed, the court specifically declined to address whether the bridge was a "component part" of the land, explaining that the latter inquiry was immaterial to its analysis.[24] As the Hebert court stated, "[i]t is not necessary to determine whether the bridge is in fact a movable, or has become a component

---

[21] See, e.g., Exxon Corp. v. Foster Wheeler Corp., 2000-2093, p. 3 (La. App. 1 Cir. 12/28/01); 805 So. 2d 432, 434 (explaining that section 9:2772 "applies only to immovables").

[22] 02-62, pp. 2-4 (La. App. 3 Cir. 6/5/02); 819 So. 2d 470, 471.

[23] Id. at pp. 3-4; 819 So. 2d at 472.

[24] Id.

part of the land, to determine whether we find the bridge to be an improvement to the immovable, i.e., the tract of land upon which it is situated."[25]

Nothing in the plain language of 9:2772 requires that the item itself be an immovable, either in and of itself or by virtue of being a component part of an immovable; rather, the plain language of the statute requires only that the item be an "improvement to immovable property." If the Louisiana Legislature had intended for the statute to apply so narrowly, i.e., only to immovables and their component parts, the Legislature easily could have used the phrase "component parts of immovables" rather than "improvements to immovable property." Importantly, it did not. It is significant, then, that although the Louisiana Civil Code and its ancillary statutes make numerous references to "component parts," 9:2772 includes no such reference.[26]

---

[25] Id. at p. 4; 819 So. 2d at 472. Although the court in Hebert concluded that "[r]oads and bridges built across a tract of land are improvements to that land," the court apparently saw no need to determine the definition of the term "improvement" and did not do so. Id. at p. 3; 819 So. 2d at 472.

[26] See, e.g., LA. CIV. CODE ANN. art. 465 (2008) ("Things incorporated into a tract of land, a building, or other construction, so as to become an integral part of it, such as building materials, are its component parts.") (emphasis added); LA. CIV. CODE ANN. art. 466 (2008) ("Things permanently attached to a building or other construction are its component parts.") (emphasis added); LA. CIV. CODE ANN. art. 467 (2008) (providing that an "owner of an immovable may declare that machinery, appliances, and equipment owned by him and placed on the immovable ... for its service and improvement are deemed to be its component parts" by filing "for registry in the conveyance records of the parish in which the immovable is located") (emphasis added); LA. REV. STAT. ANN. § 9:1122.105 (2008) ("The condominium declaration shall contain or provide for ... [t]he undivided shares, stated as percentages or fractions, in the common elements which are a component part of each of the units.") (emphasis added); LA. REV. STAT. ANN. § 9:2800.53(3) (2008) (defining "product" as "a corporeal movable that is manufactured for placement into trade or commerce, including a product that forms a component part of ... another product or an immovable.") (emphasis added); LA REV. STAT. ANN. § 9:3304(A) (2008) ("This Chapter shall, however, continue to apply to leases of movable property which subsequently becomes a component part of an immovable....") (emphasis added); LA. REV. STAT. ANN. § 9:4808(a) (2008) ("A work is a single continuous project for the

In applying the law, we may neither ignore a legislature's deliberate choice of wording nor assume that the legislature intended to say something that it did not say. Thus, mindful of the admonition of Louisiana's legislature that "legislation is superior to any other form of law,"[27] we decline to read into the statute a narrowing construction that is not clearly present in its plain language. To determine whether Plaintiffs' claims are perempted under 9:2772, therefore, we must first determine the generally prevailing meaning of the term "improvement."

In interpreting undefined statutory terms in the Louisiana Civil Code and its ancillary statutes, Louisiana courts commonly look to dictionary definitions for guidance.[28] For example, the Louisiana Supreme Court has described dictionaries as "a valuable source" for determining the generally prevailing meaning of undefined statutory terms.[29] Other Louisiana courts have similarly

---

improvement, construction, erection, reconstruction, modification, repair, demolition, or other physical change of an immovable or its component parts.") (emphasis added); LA. REV. STAT. ANN. § 9:5391 (2008) ("A mortgage of immovable property without further action attaches to present and future component parts thereof and accessions thereto, without further description and without the necessity of subsequently amending the mortgage agreement.") (emphasis added).

[27] See LA. CIV. CODE ANN. art. 1, Revision Comments (c) (2008).

[28] See, e.g., Hopkins v. Howard, 2005-0732, p. 8 (La. App. 4 Cir. 4/5/06); 930 So. 2d 999, 1005 (looking to the Black's Law Dictionary definition of "affiliate" to determine whether the undefined statutory term applied to parent corporations); Cleco Evangeline, LLC v. La. Tax Comm'n, 2001-2162, p. 5 (La. 4/3/02); 813 So. 2d 351, 354 (looking to the Black's Law Dictionary definition of "consumer" to determine the word's generally prevailing meaning); McCall v. Cameron Offshore Boats, Inc., 93-787, p. 6 (La. App. 3 Cir. 3/9/94), 635 So. 2d 263, 267 (looking to Black's Law Dictionary for a definition of the undefined statutory phrase "affiliate company").

[29] Gregor v. Argenot Great Cent. Ins. Co., 2002-1138, p. 7 (La. 5/20/03), 851 So. 2d 959, 964.

explained that "[d]ictionaries provide a useful starting point for determining what statutory terms mean, at least in the abstract, by suggesting what the legislature could have meant by using particular terms."[30]

Black's Law Dictionary — a traditional resource of Louisiana courts endeavoring to interpret undefined statutory terms[31] — defines "improvement" as "[a]n addition to real property, whether permanent or not; esp., one that increases its value or utility or that enhances its appearance."[32] Similarly, the American Heritage Dictionary of the English Language defines "improvement" as "[a] change or addition that improves."[33] And, although the Louisiana Civil Code does not define "improvement," it addresses "improvements" in several contexts, e.g., owners in indivision,[34] improvements made to community property using separate funds,[35] improvements made during the term of a usufruct,[36] improvements made to separate property using community funds,[37] and,

---

[30] See, e.g., Hopkins v. Howard, 2005-0732, p. 8 (La. App. 4 Cir. 4/5/06); 930 So. 2d 999, 1005 (quoting 2A Norman Singer, Statutes and Statutory Construction § 47:28 (6th ed. 2000)).

[31] See, e.g., cases cited supra note 28.

[32] Black's Law Dictionary (8th ed. 2008) (emphasis added). It is significant that the definition provides that an item may be an "improvement" "whether permanent or not." Id. Compare, for example, the definition of "improvement" to the definition of "fixture": "Personal property that is attached to land or a building and that is regarded as an irremovable part of the real property, such as a fireplace built into a home." Id. (emphasis added).

[33] American Heritage Dictionary of the English Language (4th ed. 2000).

[34] LA. CIV. CODE ANN. art. 804 (2008).

[35] LA. CIV. CODE ANN. art. 2367 (2008).

[36] LA. CIV. CODE ANN. arts. 558, 601, 602, 606 (2008).

[37] LA. CIV. CODE ANN. art. 2366 (2008).

extensively, in connection with ownership of improvements.[38] In virtually every instance, the Louisiana Civil Code employs the undefined term "improvement" in its dictionary or conversational sense, and must be read as including an addition not just to raw land but to buildings and structures constructed on the land.

This interpretation is consistent with our holding in Moll v. Brown & Root, Inc., in which we concluded that claims against the designer of an exterior muffler attached to a seven-story structure were preempted under 9:2772.[39] In Moll, we began our analysis by acknowledging, as we do today, that the term "improvement" is undefined in both 9:2772 and the Louisiana Civil Code.[40] Proceeding to interpret "improvement" in light of other Code provisions and ancillary statutes that use the term, we concluded — unlike the district court here — that the muffler's status as a component part was immaterial to the question whether 9:2772 applied.[41] Instead, we held that the plaintiffs' claims were preempted under 9:2772 because the large, man-made structure containing the muffler — and not the muffler itself — was permanently attached to the tract of land (immovable property) on which the structure was situated.[42]

It is equally unnecessary for us to consider here whether the wood chipper has become a component part of the plywood factory to determine that the wood chipper is an improvement to immovable property for purposes of 9:2772. As the

---

[38] LA. CIV. CODE ANN. art. 493 (2008).

[39] 218 F.3d 472, 476 (5th Cir. 2000).

[40] Id. at 475.

[41] Id. at 475-76.

[42] Id. at 476.

parties do not dispute that the factory building itself is an immovable (and likely an improvement to the land on which it is situated), we are satisfied that the ten-ton wood chipper, hardwired as it is into the factory's electrical system and bolted to steel I-beams in the metal building, is an improvement to the immovable factory building. We therefore conclude that Plaintiffs' claims against Reynolds are perempted under 9:2772. Albeit for a different reason, then, we agree with the district court's ruling that Plaintiffs cannot assert a colorable claim against Reynolds.[43]

Plaintiffs also contend that the district court abused its discretion by permitting limited discovery into the issue of peremption in the first place. We disagree. To determine whether Plaintiffs' proposed amendment was a guise for forum manipulation or would undermine the defendants' interest in remaining in federal court, the district court had discretion to permit limited discovery into "discrete and undisputed facts" that had been omitted from the complaint and that might preclude recovery against the in-state defendant, e.g., specific characteristics of the wood chipper that might aid the district court in determining whether that machine is an improvement to immovable property.[44] Under a different set of facts, we might question whether the district court exceeded its authority when it concluded that the testimony of the defendants' witness was "more persuasive" as to "the most contested fact," viz., whether removing the wood chipper would have substantially damaged the sheet metal

---

[43] In reaching this conclusion, we express no opinion whatsoever as to the applicability of section 9:2772 to Plaintiffs' remaining claims.

[44] See Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573-74 (5th Cir. 2004) (emphasis added). As we explained in Smallwood, however, such an inquiry must be kept on a "tight judicial tether" and "should not entail substantial hearings." Id.

building in which it is housed.  We need not answer that question here, though, as the wood chipper's status as a component part is immaterial to our holding.[45]

## IV. CONCLUSION

We hold that the district court did not abuse its discretion by denying as futile Plaintiffs' motion for leave to amend, as there is no reasonable basis to predict that Plaintiffs can recover on their perempted claims against Reynolds. Accordingly, the ruling of the district court is AFFIRMED, and the case is REMANDED for further proceedings consistent with this opinion.

---

[45]  We also question the appropriateness of the district court's statement that "[e]ven if peremption were not an issue, ... the plaintiffs have presented no evidence whatsoever that they would have a realistic chance of recovery against Reynolds."  This alternative basis for the court's holding is especially troublesome given that (1) Reynolds was not even formally a defendant at that time, and (2) the district court had authorized only limited discovery into the issue of peremption, not liability.  Again, though, we need not address this issue on appeal, as the district court's statement appears to be dicta and is immaterial to our conclusion here.