# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30649
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

May 16, 2016

Lyle W. Cayce
Clerk

SHIRLEY BENNETT,

      Plaintiff–Appellant,

v.

CONSOLIDATED GRAVITY DRAINAGE DISTRICT NO. 1,

      Defendant–Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:14-CV-217

Before KING, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

      Following her termination from Consolidated Gravity Drainage District No. 1 of Tangipahoa Parish (Consolidated), Plaintiff-Appellant Shirley Bennett, an African-American female, brought suit under Title VII of the Civil Rights Act of 1964, alleging discrimination and retaliation on the basis of her race.  The district court denied Bennett's motion to amend her complaint to add a claim under Louisiana's whistleblower statute and a claim under § 1983

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30649

for violations of procedural due process, then granted Consolidated's motion for summary judgement as to the Title VII claims. We affirm.

**I**

Bennett worked at Consolidated from 1991 until her termination in 2012. Her annual reviews during the period of employment reveal a mixed record involving periods of tardiness and excessive personal phone calls, but also periods of stronger performance.

The "key event" at the center of this litigation occurred on March 26, 2012. That morning, Bennett drank ice water from a styrofoam cup in her office. After leaving her office for an indeterminate period of time, she returned and took a sip from the same cup, expecting cold water from melted ice. However, the liquid she drank "started burning" her mouth, suggesting to her that there was more than just water in the cup. After investigating, Bennett determined that the contents of her cup smelled like the hand sanitizer in a bottle on her desk. She concluded that someone had put hand sanitizer in the cup.

After discussing the incident with her superiors, Clyde Martin and Nancy Galofaro, Bennett reported the incident to Tangipahoa County Sheriff's Office (TCSO) the next morning. The TCSO interviewed Bennett, Martin, and Galofaro and took the cup into evidence to investigate. No criminal charges were brought. However, the incident was greatly distressing for Bennett, causing her to cry on multiple occasions. According to Bennett, her superiors treated her poorly in the aftermath of the hand sanitizer incident as she pressed for further investigation, and they yelled and screamed at her because they "wanted [her] to drop" it.

After her 2012 evaluation, Martin recommended that Bennett receive a 2% cost of living salary increase. Bennett wrote a letter to Board of Commissioners' (BOC) Personnel Committee—a four-member committee that

makes personnel recommendations to the full nine-member BOC, which governs Consolidated—protesting the insubstantial nature of her pay increase and questioning whether the lack of a larger raise was related to the hand sanitizer incident and her reaction thereto.

The Personnel Committee scheduled a meeting with Bennett to discuss her salary-related complaints.  At the meeting, Bennett presented the committee with a second letter detailing the hand sanitizer incident.  The Personnel Committee then deliberated.  According to a member of the committee, Carlo Bruno, a consensus was reached during the deliberation that Bennett's employment should be terminated for three reasons: (1) her "documented history of tardiness, excessive personal telephone calls, excessive personal visitors, and lack of initiative"; (2) a belief among the committee that "Bennett manufactured the entire . . . hand sanitizer incident"; and (3) Bennett "misled the Personnel Committee into believing that the purpose" of her meeting with the committee "was to discuss her 2012 evaluation and pay raise," but instead "she focused the meeting almost entirely" on the hand sanitizer incident.  The full BOC then voted to terminate Bennett, with one dissenting vote, and Bennett was fired the next day.

Following her termination, Bennett filed a charge with the EEOC alleging discrimination and retaliation.  In response to the charge, Consolidated filed a position statement with the EEOC, denying that Bennett's termination was discriminatory or retaliatory and asserting that, "[i]n summary, Ms. Bennett was terminated due to her poor performance and failure to perform the assigned work – not for any other reason."  The position statement specifically referenced Bennett's "receipt of personal phone calls and visitors at work, her failure to be punctual, and her unproductiveness" as factors that influenced her termination, all of which "had nothing to do with her race, age, or disability."  The EEOC issued a right to sue letter.

No. 15-30649

Subsequently, Bennett filed a workers' compensation claim based on the hand sanitizer incident.

Bennett then filed suit in the United States District Court for the Eastern District of Louisiana, alleging discriminatory and retaliatory termination under Title VII. Following the close of discovery, Consolidated filed a motion for summary judgment. Along with her opposition brief, Bennett filed a motion to amend her complaint. She sought to add a procedural due process claim under *Loudermill*[1] and a claim under Louisiana's whistleblower statute alleging that she was terminated in retaliation for reporting the hand sanitizer incident to authorities. The district court denied Bennett's motion to amend and granted Consolidated's motion for summary judgment in its entirety. Bennett timely appealed from both of these decisions.

## II

We review a district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party and applying the same standard as the district court.[2] Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]

We review a district court's denial of a motion to amend the complaint for abuse of discretion, unless the denial was solely based on the futility of the proposed amendment, in which case we review de novo.[4]

## III

---

[1] *Cleveland Bd. of Edu. v. Loudermill*, 470 U.S. 532 (1985).

[2] *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 856 (5th Cir. 2014).

[3] FED. R. CIV. P. 56(a).

[4] *S&W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003); *Wilson v. Bruks-Klockner, Inc.*, 602 F.3d 363, 368 (5th Cir. 2010).

No. 15-30649

The district court denied Bennett's motion to amend the complaint both because it was filed months after the deadline for motions to amend pleadings set by the district court's scheduling order and because Bennett's proposed amendment would be futile in light of the statutes of limitations applicable to the contemplated new claims. Bennett contends that both of these grounds were erroneous. Because we conclude that the district court did not err in denying Bennett's motion on the ground that she failed to establish "good cause" to amend after the scheduling order deadline, we need not reach the futility ground.

Where a motion to amend under Federal Rule of Civil Procedure 15(a) is filed after the deadline for such motions set by a scheduling order in the district court, Rule 16(b) governs the amendment.[5] Under Rule 16(b), once a scheduling order is entered, it "may be modified only for good cause and with the judge's consent."[6] That is, "[a]s to post-deadline amendment, a party must show good cause for not meeting the deadline before the more liberal standard of Rule 15(a) will apply to the district court's denial."[7] Good cause under Rule 16(b) "requires a party to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension."[8] Four factors in particular are relevant to the determination: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."[9]

---

[5] *S&W Enters.*, 315 F.3d at 535-36.

[6] FED. R. CIV. P. 16(b)(4).

[7] *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008) (citation and internal quotation marks omitted).

[8] *Id.* (citation and internal quotation marks omitted).

[9] *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (quoting *S&W Enters.*, 315 F.3d at 536).

No. 15-30649

We conclude that the district court did not abuse its discretion in finding that Bennett failed to establish "good cause."  Bennett claims that she only learned that she had viable whistleblower and procedural due process claims after reading the declarations of Martin, Galofaro, and Bruno, submitted by Consolidated in connection with its motion for summary judgment, which attributed her termination in part to the Personnel Committee's shared belief that Bennett manufactured the hand sanitizer incident.  However, Bennett conducted no discovery at all.  Had she inquired in discovery as to the reasons for her termination, she would have learned prior to the close of discovery and prior to the amendment deadline that the hand sanitizer incident played a role in her termination.  Thus, it cannot be said that Bennett exercised diligence, and the first factor weighs heavily in favor of Consolidated.

Additionally, allowing Bennett to amend her complaint at this late stage would require the district court to reopen discovery and necessitate new dispositive motions.  Thus, Consolidated would suffer prejudice in a manner that cannot be ameliorated by a continuance.[10]  Our conclusion that the district court's determination was a reasonable exercise of discretion is bolstered by the fact that "we more carefully scrutinize a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a motion for summary judgment."[11]

The district court did not abuse its discretion in denying Bennett's motion to amend.

---

[10] *See, e.g.*, *Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 239 (5th Cir. 2015) ("Squyres . . . did not file his motion until . . . after discovery had closed, after Appellees had filed their motion for summary judgment, and just two days before Squyres's response to the summary judgment motion was due.  It was therefore not an abuse of discretion for the district court to conclude that Squyres's motion came too late in the litigation.").

[11] *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999) (per curiam).

6

No. 15-30649

## IV

Bennett also contends that the district court erred in granting summary judgment on her Title VII discrimination claim. Under the *McDonnell Douglas*[12] burden-shifting framework, the plaintiff bears the initial burden of setting forth a prima facie case of discrimination, which requires her to "establish that she (1) is a member of a protected class, (2) was subjected to an adverse employment action, (3) was qualified for her position, and (4) was replaced by someone outside of the protected class."[13] If the plaintiff makes this showing, the burden of production shifts to the defendant to "articulat[e] a legitimate, nondiscriminatory reason for the adverse employment action."[14] If the defendant carries this burden, the plaintiff must establish that the proffered reason is not the true basis for the adverse employment action, but is instead a pretext.[15] The plaintiff also carries the ultimate burden of proving intentional discrimination.[16]

Here, the district court concluded, and Consolidated does not contest, that Bennett has established a prima facie case of discrimination. Bennett does not dispute that the three reasons offered by Consolidated for her termination—specifically, (1) that Bennett has a "history of tardiness, excessive personal telephone calls, excessive personal visitors, and a lack of initiative"; (2) that she manufactured the hand sanitizer incident; and (3) that she misled the Personnel Committee regarding the nature of her request for a meeting—are nondiscriminatory.

Instead, Bennett asserts that she has carried her burden of showing that the reasons are pretextual. Specifically, she argues that the explanations

---

[12] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[13] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007).

[14] *Id.*

[15] *Id.*

[16] *See, e.g., Price v. Fed. Exp. Corp.*, 283 F.3d 715, 723-24 (5th Cir. 2002).

given by Consolidated in the district court and on appeal are inconsistent with the reason given by Consolidated in its position statement to the EEOC, and that this inconsistency alone satisfies her burden of demonstrating pretext.

In its EEOC position statement, Consolidated denied Bennett's charges of discrimination and retaliation, stating, "[i]n summary, Ms. Bennett was terminated due to her poor performance and failure to perform the assigned work – not for any other reason."  Consolidated specifically cited Bennett's "receipt of personal phone calls and visitors at work, her failure to be punctual, and her unproductiveness" as factors supporting the BOC's decision to terminate.  According to Bennett, the fact that Consolidated gave only one reason to the EEOC but has given three reasons for terminating Bennett in this litigation suggests that the reasons now given are pretextual.

In support of her argument, Bennett claims that in *Burton v. Freescale Semiconductor, Inc.*,[17] the Fifth Circuit set forth a *per se* rule that inconsistencies between the explanation given to the EEOC and that given to the district court suffice to carry a plaintiff's burden of showing pretext. However, in *Burton*, we simply held, commonsensically, that a purported reason that only comes to light *after* the decision to terminate has been made cannot be the real reason for termination; we did not suggest that inconsistencies render a reason "necessarily illegitimate," as Bennett asserts.[18] To be sure, we also noted that a rationale may be "'suspect' where it ha[s] 'not remained the same' between the time of the EEOC's investigation and the ultimate litigation."[19]  However, in those cases in which we have focused on

---

[17] 798 F.3d 222, 238 (5th Cir. 2015).

[18] *Id.*

[19] *Id.* at 237 (quoting *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 415 (5th Cir. 2007)).

inconsistent rationales, there has been otherwise strong evidence of pretext.[20] No such independent evidence exists here at all, as Bennett's case depends entirely on the purported inconsistency.

More importantly, the three reasons given to the district court are not actually inconsistent with the reason given to the EEOC. Rather, the first reason—a performance-based one involving a history of personal phone calls and visitors, as well as a lack of initiative—is identical to the explanation given in the position statement, and the other two reasons do not contradict what was told to the EEOC. In *Burton*, we recognized that reasons for a termination that are merely "additional," and not contradictory, do not necessarily suggest pretext.[21] Indeed, we have never held that an employer giving additional reasons to the district court to supplement those given to the EEOC supports an inference of pretext.[22] The mere fact that Consolidated's attorneys provided the EEOC with only one of Consolidated's three justifications for terminating Bennett's employment does not constitute a substantial showing of pretext.

---

[20] *See id.* (purported rationales post-dated decision, key witnesses testified inconsistently, and employer sought to create paper trail after termination decision); *Burrell*, 482 F.3d at 415 (rationales given to EEOC versus district court were contradictory rather than supplementary and qualifications of person actually hired were worse than those of plaintiff).

[21] *Burton*, 798 F.3d at 238-39.

[22] *See Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733-34 (7th Cir. 2001) ("In [cases relied on by plaintiff], pretext was demonstrated by not only shifting but also conflicting, and at times retracted, justifications for adverse treatment. Here, [defendant] simply supplemented its explanations in the context of EEOC charges and litigation; there has been no retraction of any of its reasons for failing to promote [plaintiff] nor are any its reasons inconsistent or conflicting."); *see also Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 661 (9th Cir. 2002) (no pretext where different reasons given to state equal rights commission and district court but reasons were not contradictory); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 649 n.15 (3d Cir. 1998) (no pretext where reason given to district court was not given to EEOC); *Tidwell v. Carter Products*, 135 F.3d 1422, 1428 (11th Cir. 1998) ("At most, the jury could find that performance was an additional, but undisclosed, reason for the decision; the existence of a possible additional non-discriminatory basis for Tidwell's termination does not, however, prove pretext.").

The closest Bennett comes to showing that the reasons given to the district court are inconsistent with the reason given to the EEOC is the fact that in the EEOC position statement, Consolidated stated that Bennett was fired based on her performance and "not for any other reason." According to Bennett, the disclaimer of other grounds for termination renders any supplementary reason inconsistent. We disagree.

In any event, even were Bennett correct that the three rationales offered by Consolidated in this litigation are inconsistent with the reason provided to the EEOC, and that this inconsistency carries her burden of demonstrating pretext, summary judgment would still be appropriate with respect to Bennett's ultimate burden. For an employer to be liable for discrimination under Title VII, the employee must establish not only that the employer's purported basis for termination was pretextual, but also "that the real reason was intentional discrimination."[23] Although in many circumstances a plaintiff may defeat summary judgment merely by carrying her burden of showing that the defendant's proffered reason was false, coupled with meeting her initial burden of establishing a prima facie case,[24] this result does not follow in every case.[25]

---

[23] *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515-17 (1993).

[24] *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) ("Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."); *see also Blow v. City of San Antonio*, 236 F.3d 293, 297 (5th Cir. 2001) ("*Reeves* held that a trier of fact may infer the ultimate fact of discrimination from the falsity of the employer's explanation.").

[25] *See Reeves*, 530 U.S. at 146-47 ("[T]he factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not *compel* judgment for the plaintiff. The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is correct.'" (alteration and citation omitted) (emphasis in original) (quoting *Hicks*, 509 U.S. at 519 (1993)); *see also Hicks*, 509 U.S. at 519 ("It is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." (emphasis in original)).

No. 15-30649

In *Reeves v. Sanderson Plumbing Products, Inc.*, the Supreme Court held that judgment as a matter of law in favor of the employer would be appropriate, notwithstanding a plaintiff raising an issue of fact as to pretext, "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."[26]   Interpreting *Reeves*, we have held that "whether summary judgment is appropriate" once an employee raises a triable issue as to pretext "depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered.'"[27]

Here, even if Bennett has cast some minimal degree of doubt on any of Consolidated's reasons for terminating her employment, her evidence of pretext is weak at best.  Additionally, she has not offered even a scintilla of evidence that race had anything to do with the termination.[28]  Accordingly, no reasonable jury could conclude that the real reason for Bennett's termination was race, and under the framework of *Reeves*, Consolidated would be entitled to summary judgment even if Bennett carried her burden of showing pretext.

Additionally, Bennett does not attempt to call into question the explanation Consolidated gave to both the EEOC and the courts—her

---

[26] 530 U.S. at 148.

[27] *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Reeves*, 530 U.S. at 148-49); *see also id.* at 720 n.1 (noting that "[a]lthough *Reeves* was based on a motion for judgment as a matter of law, the standard is the same for summary judgment"); *Vadie v. Miss. State Univ.*, 218 F.3d 365, 373-74 (5th Cir. 2000) (holding that, even assuming jury credited pretext argument, "[t]here simply is not a scintilla of evidence that Dr. Vadie's national origin played any role in any decision that the defendant made with respect to him during his tenure.").

[28] *Vadie*, 218 F.3d at 373-74.

lackluster performance. Accordingly, she has failed to carry her burden of "rebut[ting] each discrete reason proffered by the employer."[29]

In sum, Bennett has not put forth evidence that Consolidated's legitimate, nondiscriminatory reasons for firing her were pretextual, and the district court properly granted summary judgment.

## V

In a single sentence of her brief, Bennett also asserts that "[a]lthough [she] did not oppose the motion for summary judgment on the retaliation claim [in the district court], that decision must also be reversed for the same reasons that the decision on the discrimination claim must be reversed." Plainly, even if the retaliation claim had merit, she has waived it.[30] Moreover, contrary to arguments in Bennett's reply brief, the position statement's insistence that Bennett was not terminated in retaliation for reporting the hand sanitizer incident is not inconsistent with Consolidated's acknowledgment that Bennett's extended discussion of that incident at her meeting to discuss her raise was a factor in her termination.

\* \* \*

For the reasons set forth above, we AFFIRM the district court's decision in its entirety.

---

[29] *Burton*, 798 F.3d at 233; *see also Rutherford v. Harris Cty.*, 197 F.3d 173, 184 (5th Cir. 1999) (A plaintiff "must provide some evidence, direct or circumstantial, to rebut each of the employer's proffered reasons and allow the jury to infer that the employer's explanation was a pretext for discrimination.").

[30] *See, e.g., Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 877 (5th Cir. 2009).