IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 8, 2008

Charles R. Fulbruge III
Clerk

No. 08-20349
Summary Calendar

SANAA FAHIM

Plaintiff-Appellant

v.

MARRIOTT HOTEL SERVICES, INC.

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas, Houston Division

Before JOLLY, BENAVIDES, and HAYNES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Sanaa Fahim filed this action under 42 U.S.C. § 2000(a), also known as Title II of the Civil Rights Act of 1964, against Marriott Hotel Services, Inc. Title II prohibits discrimination in public accommodations. Fahim alleges that Marriott violated Title II by discriminating against her on the grounds of race and religion, when denying her a room on the basis of her airline voucher. Marriott counters that at the time Fahim presented her voucher it had no rooms available. In a well-considered opinion, the district court granted summary judgment for Marriott because Fahim failed to rebut Marriott's legitimate, non-discriminatory reason for denying her a room. Fahim timely appealed. Because

we agree that Fahim has not rebutted Marriott's legitimate, nondiscriminatory reason for denying her a room, we affirm.[1]

I.

We begin with a brief summary of the facts.

Sanaa Fahim is a sixty-six year old resident of Arizona who immigrated to the United States from Egypt in 1966. She is an American citizen who identifies herself as Egyptian-American. She is a Muslim with self-described "light brown" skin.

In August 2006, Fahim spent a three-week vacation in Egypt. On her way back to Arizona, she missed a connecting Air France flight in Houston. Because she had an overnight layover, Air France gave her a voucher for a hotel room, dinner, and breakfast. At the airline's request, she agreed to assist another vouchered passenger who did not speak English. The passenger, a young woman who spoke Arabic and wore a head scarf known as a hijab, was a stranger to Fahim. Fahim herself was wearing a bandana on her hair.

Fahim stated that the Air France attendant who issued her voucher told her that there were two available rooms at the Marriott hotel at the airport. Fahim and the passenger she was assisting then made their way to the Marriott. When they arrived, there was a line of individuals waiting for a room. Fahim waited about five minutes before she reached the front desk and was attended by a male member of the hotel staff. Fahim presented her voucher to him. She stated that at first he was courteous, but that after she asked for a room for the other passenger his demeanor changed. Fahim described the incident at her deposition:

> A.    Okay. He raised his head.

---

[1] This case is marked for publication because our court has not previously articulated the proper standard to determine whether a plaintiff has satisfied his or her burden of proof in a Title II case.

Q.   Okay.

A.   And all of a sudden he looked at her and at me; and his whole face, his whole demeanor changed.  He took on another kind of face and he [waved] his two fingers at me and he said, "You have to go back." I have never been [so] shocked in my life.

\*     \*     \*     \*

A.   He said – no, he did not point.  He [waved] me out.  "You have to go back."

\*     \*     \*     \*

A.   I said, "I beg your pardon?  Go where?"

Q.   Okay.  And what did he say?

A.   "Go back to the airport."

Q.   Okay.  Did he say anything else?

A.   "We are too" – he – now he is shushing down.  "We are no longer accepting Air France vouchers."

According to Fahim, when she offered to pay for a room, he told her, "I don't have rooms." Fahim began complaining in a "raised voice." Marriott staff told her again that Marriott did not have "rooms for Air France." When Fahim asked why others were still waiting in line for a room, they told her that those individuals had reservations.

Fahim then returned to the airport.  The other passenger, who had been talking on the telephone with a relative, did not return with her.  Fahim went to the Air France desk and complained that she had not obtained a room at the Marriott.  Fahim testified that the Air France attendant told her, "That can't happen.  We booked a room for you."  Air France then issued Fahim a new

3

voucher, this time for the Quality Inn. Fahim proceeded to the Quality Inn, which accepted her, and never saw the other passenger again.

In fact, the other passenger, also of Mid-Eastern descent and Muslim appearance, went back to the Marriott about an hour later and received a room. According to Marriott, by that time rooms had been made available as other travellers cancelled their reservations.

Fahim filed this action against Marriott, alleging that Marriott discriminated against her on the basis of religion and color, in violation of 42 U.S.C. § 2000(a), also known as Title II of the Civil Rights Act of 1964. In her deposition, Fahim explained that she and the other passenger "did not look right for the part of Marriott." She stated that:

> My experience in life taught me to watch body language; and when somebody is very nice when his head was down and he called me and addressed me with "Hi, ma'am, how are you, ma'am," and all of a sudden when I point to a girl behind me who is wearing the Muslim head scarf, hijab, and his face changes, that tells me he is discriminating.

Marriott countered that it did not discriminate against Fahim when it denied her a room, but rather that it did not have a room available at the time she presented her voucher.

On Marriott's motion, the district court below dismissed Fahim's claims for damages because damages are not available under Title II. The district court then denied Fahim's motion to amend her complaint to ask for relief under 42 U.S.C. § 1981, for which damages are available. Finding no genuine issue of material fact that Marriott discriminated against Fahim, the district court granted summary judgment for Marriot.

Fahim appeals here both the denial of her motion to amend and summary judgment. For the reasons stated below, we affirm.

II.

We first address whether the district court erred when it denied Fahim's motion to amend her complaint. Federal Rule of Civil Procedure 15(a) permits leave to amend "when justice so requires." We review the district court's denial of a motion to amend for abuse of discretion. Cambridge Toxicology Group, Inc. v. Exnicios, 495 F.3d 169, 177 (5th Cir. 2007).

After the parties' pleading deadline expired, Marriott moved to dismiss Fahim's complaint to the extent it sought damages, on the ground that damages are not available under Title II. See, e.g., Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402 (1968). In response, Fahim moved for leave to amend her complaint to clarify that she also sought relief under 42 U.S.C. § 1981, under which damages are recoverable. The district court found, however, that such an amendment would not clarify Fahim's existing complaint; it would instead add an entirely new claim. Fahim's original complaint clearly sought relief only under Title II. Throughout her original complaint she referred only to Title II; nowhere did she allege a claim under § 1981.

The district court also noted that Fahim filed her motion to amend nearly a year after she first filed her original complaint, after the parties' deadline for expert designation had expired, and only two months before the close of discovery. More importantly, Fahim filed her motion to amend nearly two months after the deadline to amend pleadings had expired. Following a pretrial conference, the district court issued a docket control order on May 4, 2007, that established July 31 as the deadline for amendments. Although Fahim's counsel failed to appear at the conference, the district court gave him an opportunity to object to the order's deadlines. Fahim's counsel never objected to the July 31 deadline for amendments, nor to any other deadline. Nevertheless, on September 20, Fahim moved to amend her complaint. Fahim offered no explanation for her untimely request.

We agree with the district court that Fahim's motion to amend was untimely and that Fahim did not show good cause for the delay. We previously held that Federal Rule of Civil Procedure 16(b) governs amendment of pleadings after a scheduling order's deadline to amend has expired. S&W Enters., LLC v. Southtrust Bank of Ala., NA, 315 F.3d 533, 535 (5th Cir. 2003). Rule 16(b) provides that once a scheduling order has been entered, it "may be modified only for good cause and with the judge's consent." It requires a party "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." Id. at 535 (quoting 6A CHARLES ALAN WRIGHT et al., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1990)). As to post-deadline amendment, a party "must show good cause for not meeting the deadline before the more liberal standard of Rule 15(a) will apply to the district court's denial of leave to amend." Southwestern Bell Tel. Co. v. City of El Paso, 346 F.3d 541, 546 (5th Cir. 2003) (citing S&W Enters., 315 F.3d at 536)). Four factors are relevant to good cause: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." Id. (citing S&W Enters., 315 F.3d at 536).

The district court found that the first and third factors weighed heavily against Fahim because she offered no explanation for her failure to timely move for leave, and because Marriott would have been prejudiced if it had been forced to defend against a new claim and basis for recovery so late in the litigation. The second factor, however, weighed in Fahim's favor because the requested amendment was clearly important to Fahim. The district court acknowledged that it could have continued the trial to alleviate any prejudice to Marriott but declined to do so because Fahim offered no explanation for her untimely request. A district court has "broad discretion to preserve the integrity and purpose of the pretrial order." Id. at 547 (citing S&W Enters., 315 F.3d at 535). We accept the

district court's determination that no good cause was shown. Accordingly, we find the district court's denial of leave to amend was not an abuse of discretion.

III.

We now turn our attention to whether summary judgment was proper. We review the district court's grant of summary judgment de novo. Berquest v. Washington Mut. Bank, 500 F.3d 344, 348 (5th Cir. 2007). Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether a genuine issue as to any material fact exists, we must view the evidence in the light most favorable to the nonmoving party. Berquest, 500 F.3d at 349.

A.

Fahim brought this action under Title II of the Civil Rights Act of 1964, which prohibits discrimination in public accommodations:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.
>
> 42 U.S.C. § 2000(a); Heart of Atlanta Motel, Inc., v. United States, 379 U.S. 241 (1964).

Fahim has not alleged that Marriott or its employees used language that constituted racial or religious slurs, nor that any other incident could be directly linked to her race or religion. Fahim thus presented no direct evidence of discrimination. See Rachid v. Jack-in-the-Box, 376 F.3d 305, 310 n.6 (5th Cir. 2004) (direct evidence of discrimination is "that, if believed, proves the fact of discriminatory animus without inference or presumption" (quoting Sandstad v.

CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002)). Accordingly, her Title II case is one of circumstantial evidence only.

As the district court discovered, there is but scant case law under Title II. By contrast, Title VII of the Civil Rights Act of 1964, which prohibits discrimination in employment, has produced a good deal of case law. For this reason courts faced with a Title II case frequently borrow Title VII authority. The district court below identified several courts that have used the Title VII case McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to determine whether a plaintiff has satisfied his or her burden of proof in a Title II case for which there is circumstantial evidence only. United States v. Lansdowne Swim Club, 894 F.2d 83, 88 & n.7 (3d Cir. 1990); Hornick v. Noyes, 708 F.2d 321, 324-25 n.8 (7th Cir. 1983), cert. denied, 465 U.S. 1031 (1984); Bivins v. Wrap it Up, Inc., 2007 WL 3047122 *4 (S.D. Fla. Oct. 18, 2007); Benton v. Cousins Props., Inc., 230 F.Supp. 2d 1351, 1382 (N.D. Ga. 2002), aff'd, 97 F. App'x 904 (11th Cir.2004). Consistent with these courts, the district court used McDonnell Douglas to guide her analysis of Fahim's Title II claim.

We recently summarized in an employment discrimination case that McDonnell Douglas requires that:

> the plaintiff must first demonstrate a prima facie case of discrimination; the defendant must then articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic.
>
> Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 411-12 (5th Cir. 2007).

The district court found that Fahim's claim failed under McDonnell Douglas both because she did not establish a prima facie case of discrimination and because she did not effectively rebut Marriott's legitimate, non-discriminatory reason for not providing her a room.

B.

Because this circuit has not articulated a different test for determining whether a plaintiff has established a prima facie case under Title II, we think the district court was correct to refer to Title VII case law to fill this void. Under our Title VII precedent, a plaintiff establishes a prima facie case of employment discrimination by showing that he or she:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.
>
> McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007) (citing Wheeler v. BL Dev. Corp., 415 F.3d 399, 405 (5th Cir. 2005)).

Using these elements, the district court extrapolated that Fahim could establish a prima facie case of discrimination in public accommodation if she showed that (1) she is a member of a protected class; (2) she attempted to contract for the services of a public accommodation; (3) she was denied those services; and (4) the services were made available to similarly situated persons outside her protected class. We think the district court correctly re-purposed the elements establishing a prima facie case of employment discrimination under Title VII for its own use in determining whether Fahim established a prima facie case of discrimination in public accommodation under Title II.[2]

---

[2] The district court noted that some courts have applied a test in which the fourth element is modified. The fourth element in that modified test asks whether (a) the services were made available to similarly situated persons outside the plaintiff's protected class or (b) the plaintiff "received services in a markedly hostile manner and in a manner which a

Although we think that the district court correctly adapted Title VII's prima facie test in this Title II case, we need not decide whether that test was applied correctly to these facts. The district court presumed that Fahim satisfied the first three elements necessary to establish a prima facie case of discrimination in public accommodation, but concluded that she did not satisfy the fourth element because she did not show that Marriott made its services available to similarly situated persons outside her protected class. However, we will assume, without deciding, that Fahim satisfied the fourth element and thus established a prima facie case. We therefore proceed to address whether she met her burden of rebutting Marriott's legitimate, non-discriminatory reason for denying her a room.

C.

The district court found that even if Fahim had established a prima facie case of discrimination in public accommodation, she did not satisfy her burden of proof under McDonnell Douglas because she did not effectively rebut Marriott's legitimate, non-discriminatory reason for not providing her a room. As discussed above, McDonnell Douglas's burden-shifting analysis requires that if a defendant offers a legitimate, non-discriminatory reason for its action, a plaintiff must then put forth evidence sufficient to create a genuine issue of material fact that either (1) the defendant's reason is pretext or (2) the defendant's reason, if true, is only one reason for its action, and another "motivating factor" is the plaintiff's protected characteristic. See Burrell, 482 F.3d at 411-12 (outlining burden of proof in Title VII employment discrimination

---

reasonable person would find objectively discriminatory." See Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 872 (6th Cir. 2001) (citing Callwood v. Dave & Buster's, Inc., 98 F. Supp. 2d 694 (D. Md. 2000)). We need not decide whether the modified test is more appropriate for Title II cases because neither party argued below, nor argues on appeal, that the modified test should apply.

cases for which there is circumstantial evidence only) (citing McDonnell Douglas, 411 U.S. at 802; Rachid, 376 F.3d at 312).

Marriott offered evidence that, at the time Fahim presented her voucher, the hotel had no available rooms. According to the hotel's "Manager on Duty" report, printed on August 22, 2006, at 11:48 p.m.:

> Every thing indicated a possible quite [sic] but steady night, until the weather changed things around, we took a blanket of 35 sufficient to fill the block, as well as a number of CSOs and several Walk-ins at the rate of 209.00 only. Later on we had to close MARSHA and unblocked some of the "LAST SALE" rooms from the manual blocker to make up for the demand.
>
> At the end of the shift we still have 45 check-ins, projecting 485 rooms occupied yielding 100% with 77 rooms on VM. No Major issues to be reported.[3]

The report is consistent with hotel staff's testimony that the hotel projected full occupancy and could not accommodate persons who did not have a reservation. This is a legitimate, non-discriminatory reason for not providing Fahim a room. Fahim thus was required to put forth evidence that Marriott's reason was either pretextual or, if true, was not the "motivating factor" for denying her a room. Fahim argues for a number of reasons that Marriott's reason was pretextual. The district court, however, found that Fahim failed to establish pretext. We agree with the district court.

Fahim first points to what she calls inconsistencies in hotel staff's testimony. She argues that the assistant general manager's deposition testimony contradicts the "Manager on Duty" report's projection of full occupancy. She contends the assistant general manager admitted that there were 31 rooms available that day. But the assistant general manager only

---

[3] Marriott explained that a "CSO" is an airline voucher, "MARSHA" is Marriott's reservation system, and "VM" means "vacant maintenance."

stated that there were 31 rooms available at the start of his shift (approximately 3:30 p.m.); he did not state that those rooms were available at the time Fahim presented her voucher. The assistant general manager's testimony does not create inconsistencies suggesting pretext. Fahim's first argument fails.

Fahim also points out that there is some dispute as to who among the hotel staff told Fahim that there were no vacancies. Marriott identified Fernando Aguirre as the staff member who attended to Fahim, and Aguirre testified that he recalled Fahim. Aguirre, however, does not have the same physical traits of the staff member Fahim recalls. Specifically, Aguirre is not balding and does not have blonde hair. The district court below credited Fahim's version of the facts, but determined that this issue was not dispositive. We agree. The dispositive issue here is whether Marriott had available rooms, not which staff member attended to Fahim. This dispute is immaterial to whether Marriott's stated reason for denying Fahim a room – that it had no available rooms – was in fact pretextual.

Fahim next argues that, contrary to the district court's findings, her voucher was a reservation and Marriott refused to honor it. Marriott, however, showed that a voucher is not a reservation. Aguirre explained that a voucher guarantees payment by the airline but does not guarantee a room. He explained that reservations are made through the reservation system, require a credit card, and result in the issuance of a confirmation number. Fahim asserts that her voucher was a reservation because Air France attendants told her that they had made a reservation for her. But Fahim does not offer any admissible evidence that a voucher is a reservation. She produced copies of other Air France passengers' vouchers for rooms and meals at the Marriott hotel for various days throughout August 2006. But while some of the vouchers she produced had reservation numbers written on them, others did not. Fahim's mere assertion that she had a reservation because Air France told her so does

not establish that she had a reservation. More importantly, however, it does not establish that Marriot's stated reason for denying Fahim a room was pretextual.

Fahim also points out that Marriott failed to preserve a security videotape that documented the evening's events. But Fahim does not explain how this fact establishes pretext. The hotel's security camera did not record sound, and thus could not have documented Fahim's interactions with hotel personnel. The videotape could have shown hotel personnel turning Fahim away, but Marriott does not dispute that it denied Fahim a room. Regardless, for purposes of its motion for summary judgment, the district court accepted as true Fahim's representations of the evening's events. Because the videotape would not have affected Marriott's asserted reason for not providing Fahim a room, its absence cannot establish pretext.

Finally, Fahim complains that Marriott provided accommodation to other individuals who did not have a reservation that evening. Marriott does not dispute that some individuals without reservations obtained rooms. But Marriott produced evidence that they obtained rooms either before Marriott projected full occupancy and Fahim arrived, or after Marriott received cancellations later that same night. Fahim does not offer any evidence to show that, at the time Fahim presented her voucher, Marriott had an available room.

In sum, the arguments made by Fahim do not effectively rebut Marriot's legitimate, non-discriminatory reason for not providing her a room. Accordingly, we agree with the district court that Fahim did not satisfy her burden of proof under McDonnell Douglas.

## IV.

For the foregoing reasons, the district court's judgment for Marriott is AFFIRMED.