**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 26, 2012

Lyle W. Cayce
Clerk

No. 11-10262

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff-Appellee

v.

SERVICE TEMPS INCORPORATED, doing business as Smith Personnel
Solutions,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, SMITH, and HIGGINSON, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

A Texas jury found that a corporate staffing company violated the
Americans with Disabilities Act when it refused to let a deaf woman apply for
a warehouse job, awarding her back pay, compensatory, and punitive damages.
Entering judgment on the verdict, the judge added injunctive relief. On appeal,
the company raises five categories of issues, ranging from jurisdiction to jury
instructions. We affirm.

## I.

Looking for work in June 2006, Jacquelyn Moncada came across an online
posting that Smith Personnel ("Smith"), a staffing company that hires employees

for corporate clients, was seeking a stock clerk to package cosmetics for its client Tuesday Morning.

Deaf from birth, Moncada arranged for a sign language interpreter to meet her at the job site to translate as she applied for the position. Carl Ray, an account manager for Smith, met Moncada at the job site and told her she could not apply for the position because she is deaf, that the warehouse environment would be too dangerous for her. Moncada attempted to explain that she had had no trouble communicating while working in warehouses in the past, but Ray persisted, advising her that she could not apply.

Moncada filed a charge with the Equal Employment Opportunity Commission ("EEOC") on July 13, 2006. Smith responded, denying wrongdoing and stating its willingness to "assist Ms. Moncada in her job search, assuming that we can in fact communicate." After investigating, the EEOC determined that Smith had violated the Americans with Disabilities Act of 1990 ("ADA") by turning Moncada away at the job site. It issued a Notice of Determination on December 18, 2007.

The same day, the EEOC proposed that Smith pay $65,000 to settle all claims for back pay, compensatory, and other damages. Smith countered with a $5,000 proposal and reiterated its offer to help Moncada find work. Without informing Moncada of Smith's offer, the EEOC countered, seeking $16,000 in back pay and $39,000 for all other damages. Smith rejected the EEOC's second proposal and conditioned further conciliation on the EEOC's presentation of "calculations and justifications for the amount sought." The EEOC sent Smith and Moncada a Notice of Conciliation Failure on February 22, 2008. Voluntary mediation among the parties in April 2009 also proved unsuccessful.

The EEOC filed suit on September 3, 2008, alleging that Smith's refusal to hire Moncada violated the ADA and that "[a]ll conditions precedent to the institution of this lawsuit have been fulfilled." In its answer, Smith generically

denied "that all conditions precedent have been fulfilled." The district court set March 1, 2009, as the deadline for amending the pleadings.

In discovery, the EEOC stated that it was seeking up to the statutory cap under the ADA for compensatory and punitive damages. It also disclosed evidence that Moncada had sought other work after Smith had refused to hire her. The EEOC admitted that it had not informed Moncada of Smith's August 2006 offer to help her find a job, if they "[could] in fact communicate."

More than three months after the pleadings deadline, Smith filed its first motion for leave to amend its answer to add failure to conciliate as a defense, pointing to the EEOC's failure to inform Moncada of its offer. The court denied the motion without prejudice for not addressing the appropriate legal standard. Smith filed a second motion for leave to amend its answer on August 3, 2009. The court also denied that motion, holding that Smith had failed to demonstrate good cause for the delay in amending its answer, as required under FED. R. CIV. P. 16(b)(4).

The EEOC moved for partial summary judgment on November 3, 2009, arguing that it had met all conditions precedent to suit, including conciliation. Smith then filed a motion for summary judgment arguing that the EEOC had failed to conciliate in good faith, requiring dismissal of the action. The district court granted the EEOC's motion, holding that Smith could not assert failure to conciliate as a defense because it had not specifically included it in its answer, as required by FED. R. CIV. P. 9(c). Smith moved for reconsideration, arguing that conciliation is not a condition precedent. The court denied it.

Smith also moved for partial summary judgment on the ground that the EEOC had failed to provide "a computation of each category of damages," as required by FED. R. CIV. P. 26(a)(1)(A)(iii).[1] Smith asserted that, as a result of

---

[1] FED. R. CIV. P. 26(a)(1)(A)(iii) provides that, with some exemptions not relevant here, "a party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party—who must also

the EEOC's alleged failure, the EEOC should be precluded under FED. R. CIV. P. 37(c)[2] from using information on damages at trial, and that therefore the action for damages should be dismissed.  The district court construed Smith's motion as a motion *in limine* and granted it, declaring that the EEOC could not state a specific amount of damages during the trial without court approval.[3]

In the week preceding trial in September 2010, the district court distributed a copy of the jury charge it planned to use and invited counsel to make objections.  Smith objected that the charge did not sufficiently articulate the "heightened showing" required for punitive damages or the subjective component of recklessness; Smith also asked the court to remove an instruction on corporate agency.  Ultimately, the district court delivered the following instruction on punitive damages:

> In order for Smith to be liable for punitive damages, the EEOC must prove that the agent of Smith of whose conduct EEOC complains (1) was employed in a position of managerial capacity, (2) acted within the scope of employment, and (3) acted with malice or reckless indifference to Moncada's right not to be discriminated against based on disability.

Smith moved for judgment as a matter of law at the end of the EEOC's case and also at the close of its case, which the court denied.  Smith renewed the motion after judgment was entered, raising for the first time that the EEOC had failed to establish that Ray had acted with malice or reckless indifference.

---

make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered."

[2] FED. R. CIV. P. 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) . . . , the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

[3] Shortly before trial, the district court said it would allow the EEOC to argue specific back pay amounts, finding that any failure to disclose back pay calculations was harmless.

Because Smith had not raised the malice issue in its Rule 50(a) motion during trial, the court considered it waived and denied the motion.

After the three-day trial, the jury found that Smith had violated the ADA by refusing to hire Moncada based on her disability, awarding $14,400 in back pay, $20,000 in compensatory damages for emotional pain and suffering, and $150,000 in punitive damages. The EEOC then moved for injunctive relief. Smith moved to dismiss based on lack of subject matter jurisdiction and, separately, for a new trial or a remittitur. The court granted the EEOC's motion for injunctive relief and denied Smith's motion to dismiss for lack of jurisdiction, but it conditioned its denial of Smith's motion for a new trial on the EEOC's acceptance of a remittitur that would reduce the punitive damages award to $68,800. The EEOC accepted. The court entered its amended judgment on January 11, 2011, which included the injunctive relief the EEOC sought. As injunctive relief, the district court required that Smith (1) refrain from discriminating against disabled employees, (2) provide employees with, and publicly post, a notice explaining the ADA's protections, (3) provide one hour of ADA training to managers, and (4) notify the EEOC when an employee complains of disability discrimination.

Smith timely appealed.

## II.

Smith contends that the district court lacked subject matter jurisdiction, a determination we review de novo,[4] because there was no evidence that Smith was engaged in an industry affecting interstate commerce. Specifically, Smith challenges (1) the district court's conclusion that the ADA's requirement that an employer be "engaged in an industry affecting commerce"[5] is not jurisdictional

---

[4] *See Arena v. Graybar Electric Co.*, 669 F.3d 214, 218-19 (5th Cir. 2012).

[5] 42 U.S.C. § 12111(5)(A). The ADA further defines "industry affecting commerce," in relevant part, as "any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce." *Id.* § 12111(7) (referencing

and (2) the evidentiary basis for the district court's conclusion that Smith was in fact engaged in an industry affecting interstate commerce.

The district court held, and the EEOC urges, that the ADA's "affecting commerce" requirement is a substantive rather than a jurisdictional requirement. We decline to resolve that question of law in this case, which presents ample alternative grounds for affirming the district court's conclusion on subject matter jurisdiction.[6] Whether or not the "affecting commerce" requirement is jurisdictional, this case satisfies it.

A stipulation in the joint pretrial order informs the "affecting commerce" analysis. Factual stipulations are binding on parties, having "'the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.'"[7] Stipulations alone cannot confer jurisdiction, but they can form the factual basis for jurisdiction,[8] as one does here. In the joint pretrial order, the parties agreed that Smith had advertised the stock clerk position to which Moncada applied on the Texas Workforce Commission's "Work in Texas" website. That site provides resources for individuals, both Texans and out-of-staters, who seek work in Texas. Smith's advertising on an open website with the potential, or even intent, to draw residents of other states to Texas in search of

---

*id.* § 2000e(h)). "Commerce" is defined, in relevant part, as "trade, traffic, commerce, transportation, transmission, or communication among the several States." *Id.* (referencing *id.* § 2000e(g)).

[6] *See Ballew v. Continental Airlines*, 668 F.3d 777, 781 (5th Cir. 2012) ("We may . . . affirm [the district court's conclusion on subject matter jurisdiction] on any ground supported by the record, including one not reached by the district court.").

[7] *Christian Legal Soc'y v. Martinez*, 130 S. Ct. 2971, 2983 (2010) (quoting 2 MCCORMICK ON EVIDENCE 181 (Kenneth S. Broun ed., 6th ed. 2006)).

[8] *See Ry. Co. v. Ramsey*, 89 U.S. (22 Wall.) 322, 327 (1874) ("Consent of parties cannot give the courts of the United States jurisdiction, but the parties may admit the existence of facts which show jurisdiction, and the courts may act judicially upon such an admission."); *Woolwine Ford Lincoln Mercury v. Consol. Fin. Res., Inc.*, 245 F.3d 791, at *2 (5th Cir. 2000) (unpublished table decision) (per curiam); *United States v. Mills*, 199 F.3d 184, 188 & n.3 (5th Cir. 1999) (per curiam).

employment is enough to clear the "very low" bar that defines economic activity affecting interstate commerce.[9]

The district court properly determined that it had subject matter jurisdiction over this dispute.

## III.

At the summary judgment stage, the district court twice rejected Smith's attempts to argue that the EEOC had not conciliated in good faith.[10] The court's reasons were procedural, based on Smith's failure to raise the issue in its answer, and did not concern the merits of Smith's claim.[11] Smith now argues that the district court (1) erred by concluding that Smith was required to plead "lack of conciliation" with specificity in its answer and (2) abused its discretion in denying Smith's second motion for leave to amend its answer.

*1. Denying Conciliation*

Smith argues that failure to conciliate can be raised through motions, even when not raised with particularity in previously filed pleadings, and that the district court therefore erred by requiring Smith to have pleaded it specifically

---

[9] *EEOC v. Ratliff*, 906 F.2d 1314, 1316 (9th Cir. 1990) (collecting cases from the Title VII context); *see id.* at 1317 (noting "how rare it is for the 'affects commerce' requirement to pose a bar to suit"); *cf. United States v. Horne*, 474 F.3d 1004, 1006 (7th Cir.) (holding that advertising on an online auction site uses "an avenue of interstate commerce," and collecting cases from other circuits), *cert. denied*, 551 U.S. 1123 (2007); *United States v. Runyan*, 290 F.3d 223, 239 (5th Cir.) (holding that the transmission of child pornography via the Internet constitutes transportation through interstate commerce), *cert. denied*, 537 U.S. 888 (2002).

[10] Conciliation is a statutory requirement: "[T]he Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b). This Court has held that the requirement is not jurisdictional. *See EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 469 (5th Cir. 2009).

[11] Smith's argument on the merits is that the EEOC failed to conciliate in good faith by ignoring Smith's offer to assist Moncada in her job search and failing to inform Moncada of the offer. The EEOC maintains that it was under no obligation to either act on the offer or to inform Moncada because it was not an offer of unconditional employment. Without speaking to the merits in this case, we emphasize that as a matter of best practice, the EEOC should be conscientious about sharing settlement offers with those it represents.

in its answer to the complaint. We review this legal question, stemming from a summary judgment ruling, de novo.[12]

FED. R. CIV. P. 9(c) permits a plaintiff in its pleadings to aver generally that all conditions precedent have been satisfied, but it requires that "when denying a condition precedent has occurred or been performed, a party must do so with particularity." This Court has held that conciliation is a condition precedent.[13] It would seem to follow, then, that Smith was required to raise failure to conciliate specifically in its answer. Because it did not,[14] the district court held, Smith was precluded from asserting it in a subsequent motion for summary judgment.

To refute the district court's analysis, Smith points to a quotation from *EEOC v. Klingler Electric Corp.*, stating that "Klingler's motion to dismiss . . . was sufficient to raise the [conciliation] issue."[15] Presumably, Smith is arguing that a motion to dismiss—and, by extension, any motion—is appropriate for raising failure to conciliate even when the pleadings did not. That argument ignores that Klingler filed its motion to dismiss in lieu of an answer.[16] Unlike Smith, Klingler had not previously filed an answer that failed to raise the conciliation issue. *Klingler* is no succor for defendants who would use motions

---

[12] *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 327 (5th Cir. 2009).

[13] *See Agro Distribution,* 555 F.3d at 469 ("[W]e conclude that the EEOC's conciliation requirement is a precondition to suit."). Smith attempts to argue that there is a distinction between a "condition precedent" and a "precondition to suit," but we agree with the district court that the terms are "functionally synonyms."

[14] Smith included in its answer only a general denial that all conditions precedent had been satisfied, which is insufficient under FED. R. CIV. P. 9(c). *See Trinity Carton Co. v. Falstaff Brewing Corp.*, 767 F.2d 184, 192 (5th Cir. 1985), *cert. denied*, 475 U.S. 1017 (1986).

[15] 636 F.2d 104, 107 (5th Cir. Unit A Feb. 1981) (per curiam).

[16] *See id.* at 106; Docket Sheet at 2, *EEOC v. Klingler Electric Corp.*, No. J80-0017(B) (S.D. Miss., closed Apr. 14, 1983) (showing that Klingler's first filing in the case was its motion to dismiss the amended complaint, filed on March 5, 1980, and showing no answer filed until after the Fifth Circuit's decision reversing and remanding).

to deny conditions precedent after failing to do so with particularity in their answers.

Smith also points to *Moore's Federal Practice* ("*Moore's*"), which infers from two cases that "[d]enial of performance or occurrence of a condition precedent may . . . be made in a motion for summary judgment."[17] But neither of the courts cited by *Moore*'s was faced with a summary judgment motion,[18] and in any event, they do not answer our ultimate question: whether a defendant can raise the absence of a condition precedent in a summary judgment motion if he first responded to the complaint with an answer that failed to raise it and was not amended to include it.

Nevertheless, more recently, two Circuits have relied on the statement in *Moore*'s to answer that question in the affirmative. In one of the cases, the only support cited besides *Moore*'s is this Circuit's case, *Klingler*, which, as we explained, is no support at all.[19] The other case, which is unpublished, relies on the Seventh Circuit dicta cited in *Moore*'s, which in turn relies on *Klingler*.[20] Thus, in neither case does the chain of citations and authorities lead to any

---

[17] 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 9.04[3] (3d ed. 2007).

[18] *Stearns v. Consol. Mgmt., Inc.*, 747 F.2d 1105, 1112 (7th Cir. 1984) (citing *Klingler*, in dicta, for the proposition that "[a] defendant may raise the issue of non-performance of a condition precedent prior to trial by way of a motion for summary judgment"); *Spindle v. Pennsylvania*, 660 F. Supp. 941, 945 (M.D. Pa. 1987) (quoting *Stearns*, 747 F.2d at 1112, again in dicta).

[19] *Associated Mech. Contractors, Inc. v. Martin K. Eby Constr. Co.*, 271 F.3d 1309, 1317 (11th Cir. 2001) (citing *Klingler*, 636 F.2d at 107, and 2 *Moore's Federal Practice* § 9.04[3]) ("The specific denial of performance of conditions precedent may be raised by motion as well as by answer.").

[20] *Heights Driving Sch., Inc. v. Top Driver, Inc.*, 51 F. App'x 932, 939-40 (6th Cir. 2002) (unpublished) (citing *Stearns*, 747 F.2d at 1112, and 2 *Moore's Federal Practice* § 9.04[3]) ("Rule 9(c) does not specify that a denial of the performance of a condition precedent must be made in an answer or amended answer. Under the circumstances of this case, we think that the specific denials made in [the defendant]'s summary judgment motion are sufficient."), *noted in* 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1304 (3d ed. 2004).

substantive support for the proposition that those courts apply.[21]  In fact, those Circuits had earlier expressed rules to the contrary,[22] as have other Circuits.[23]

Smith shows us no reason that the district court erred in denying Smith's summary judgment motion as a long-shot attempt to cure a defect in its answer. Rule 9's scope, by its very title ("Pleading Special Matters"), is limited to pleadings.    For "special matters" like conditions precedent, Rule 9's requirements dictate what must appear in certain pleadings.  Here, the Rule requires that a party must deny the occurrence or performance of a condition precedent, with particularity, in the operative pleadings.  It does so for several reasons of orderliness and efficiency.  It is no surprise that there is no support in the text of Rule 9 or the relevant case law[24] for the proposition that the author of a deficient pleading should be afforded the disruptive opportunity at the summary judgment stage to explain for the first time why the case should not have proceeded in the first place.  Moving for leave to amend the pleadings is the obvious and proper method for repairing pleadings that failed to raise such preliminary matters.  The Rule's insistence upon leave of court for amendment

---

[21] *Cf.* Adam D. Chandler, Comment, *Puerto Rico's Eleventh Amendment Status Anxiety*, 120 YALE L.J. 2183, 2191 & n.44 (2011) (pursuing a chain of authorities to find a thirty-year-old legal error that was entrenched through iterative citation).

[22] *See Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982) ("If . . . the defendant does not deny the satisfaction of the preconditions specifically and with particularity, then the plaintiff's allegations are *assumed admitted*, and the defendant cannot *later assert* that a condition precedent has not been met." (emphasis added)); *Ginsburg v. Ins. Co. of N. Am.*, 427 F.2d 1318, 1322 (6th Cir. 1970) ("[The defendant] made only a general denial [that all conditions precedent had been performed], and consequently failure to file proof of loss did not become an issue in this case.").

[23] *See Walton v. Nalco Chem. Co.*, 272 F.3d 13, 21-22 & n.14 (1st Cir. 2001) (quoting *Jackson*, 678 F.2d at 1010); *Lumbermens Mut. Ins. Co. v. Bowman*, 313 F.2d 381, 387 (10th Cir. 1963).

[24] *See generally Am. Bankers Ins. Co. of Fla. v. Irricon*, 200 F.3d 815, at *1 n.1 (5th Cir. 1999) (unpublished table decision) (per curiam) (assuming without deciding that failure to deny, with particularity, the performance of a condition precedent in the answer to a complaint is a "deficiency in the answer").

is of a piece with the duties of management imposed upon district judges by Rule 26.

In sum, the district court correctly held that, to deny that a nonjurisdictional condition precedent like conciliation had been performed, Smith was required to do so with particularity in its answer.

*2. Denying Leave To Amend the Answer*

In December 2008, the district court set March 1, 2009, as the deadline for filing motions for leave to amend the pleadings. The deadline was three-and-a-half months from the time Smith filed its answer. And yet not until two months *after* the pleadings deadline did Smith commence discovery, when it served the EEOC with requests for admission that the EEOC had not acted on Smith's offer to assist Moncada in her job search before it issued the Notice of Determination. Smith attempted to amend its answer when it received the EEOC's response. While amending its answer was the proper course, as we have found, the district court could find no good cause for Smith's delay and denied it leave to amend its answer.

This Court reviews a trial court's denial of leave to amend pleadings for abuse of discretion.[25] Under FED. R. CIV. P. 16(b)(4), a party seeking to amend its pleadings after a deadline has passed must demonstrate good cause for needing an extension.[26] The four factors relevant to good cause are: "'(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'"[27]

---

[25] *See United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010).

[26] *See Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008).

[27] *Id.* (quoting *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003)).

For the first factor, the district court concluded that Smith "fail[ed] to provide a plausible explanation for its delay." Smith filed its answer, then waited almost six months before commencing discovery, allowing the pleadings deadline to pass in the meantime.[28] The EEOC had been sending discovery requests for months when Smith finally began. Smith had three-and-a-half months to meet the particularity requirement for its conciliation defense, but it dragged its feet on discovery and now cannot explain why.

Moreover, the EEOC's discovery responses were not Smith's initial source of information for its conciliation argument. As the district court observed, Smith "at least had enough knowledge of the facts to" have filed a Rule 11 motion in December 2008 (well before the pleadings deadline) alleging that the EEOC had "completely ignored" its offer to help Moncada, and it later filed a specifically worded request for admission on the same ground. Smith's knowledge, or at least its reasonable suspicion, accents its inability to explain the delay.

Smith had time to obtain discovery and seek leave to amend by the March 1 deadline. The district court found that Smith's failure to account for its delay was dispositive, outweighing the other three factors for assessing good cause. The district court's determination is well supported and squarely within its sound discretion.

## IV.

Smith argues that, because the EEOC failed to provide computations for compensatory or punitive damages under FED. R. CIV. P. 26(a)(1)(A)(iii), the EEOC should have been precluded from seeking any damages whatsoever. When Smith made this argument below, the district court ruled substantially in its favor, instructing the EEOC that it would not be able to argue a specific

---

[28] The April 2009 mediation was no impediment to commencing discovery, as the parties had agreed that the mediation would not pause or delay any paper discovery.

damages amount before the jury, but the court did not dismiss the entire action for damages, as Smith had requested.  The EEOC complied with the district court's instruction at trial.  Now on appeal, Smith does not attempt to explain why the district court's accommodation was insufficient.  FED. R. CIV. P. 37(c)(1), which governs sanctions for failing to disclose information under FED. R. CIV. P. 26, explicitly provides for the curative measure that the district court imposed. Smith points to no example of an appeals court's reversing a jury verdict or eliminating a damages award on this basis.[29]  We likewise find no reason to do so here.[30]

## V.

Smith contests the punitive damages award on four grounds: (1) that the jury instruction was improper, (2) that there was no evidence that Ray was malicious or recklessly indifferent, (3) that there was no evidence that Ray acted in a managerial capacity within the scope of his employment, and (4) that the award is excessive.

*1. The Jury Instruction*

Smith argues that the punitive damages instruction misled jurors to mistakenly substitute *Smith*'s knowledge of the ADA for its *agent*'s when analyzing the requisite intent.  Smith did not make this objection below, raising

---

[29] *Cf. Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 515 (5th Cir. 1985) (describing a district court's dismissal of a complaint with prejudice as "draconian" and a "remedy of last resort" when imposed as a sanction under FED. R. CIV. P. 37).

[30] Smith makes a second argument, that mitigation of damages is not an affirmative defense that must be included in a defendant's answer to prevent waiver.  This Court has repeatedly referred to failure to mitigate as an affirmative defense, *see, e.g.*, *Jackson v. Host Int'l, Inc.*, 426 F. App'x 215, 224 (5th Cir. 2011) (unpublished) (per curiam); *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 537 (5th Cir. 2009), and therefore the district court did not abuse its discretion by granting the EEOC's motion *in limine* to exclude evidence of failure to mitigate at trial, *see Vanhoy v. United States*, 514 F.3d 447, 450 (5th Cir. 2008) (requiring that affirmative defenses must generally be "set forth in a defendant's responsive pleading" or else the defendant waives them); *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 643(5th Cir. 2005) (reviewing the grant of a motion *in limine* for abuse of discretion).

our standard of review to plain error.[31]  That is, for Smith to prevail, it must establish "'(1) that an error occurred; (2) that the error was plain, which means clear or obvious; (3) [that] the plain error must affect substantial rights; and (4) [that] not correcting the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings.'"[32]

Smith points to one instance from the opening sentence of the jury charge on punitive damages in which the district court used "Smith" when it could have specified "Ray" or "Smith's agent" instead.  That sentence instructed that, before punitive damages can be awarded, the EEOC must prove that "Smith discriminated against Moncada with malice or reckless indifference."  Read in full, though, the instruction goes on to specify, twice, that Smith's agent is the relevant actor for the purpose of punitive damages, and one of those times, it explicitly distinguishes the agent from Smith itself.[33]  Those statements refine and clarify the more general opening statement.  They also unambiguously and correctly explain that the jury must examine the agent's intent in order to impute liability to the company.[34]  The prior reference to "Smith" that Smith alleges is improper was not a part of that explication of the operative law.  When

---

[31] *See Russell v. Plano Bank & Trust*, 130 F.3d 715, 719-21 (5th Cir. 1997), *cert. denied*, 523 U.S. 1120 (1998).

[32] *Id.* at 721 (quoting *Highlands Ins. Co. v. Nat'l Union Fire Ins. Co.*, 27 F.3d 1027, 1032 (5th Cir. 1994)).

[33] The jury charge provided:

> In order for Smith to be liable for punitive damages, the EEOC must prove that the agent of Smith of whose conduct the EEOC complains . . . acted with malice or reckless indifference to Moncada's right not to be discriminated against based on disability. . . . Additionally, you cannot award punitive damages against Smith if Smith proves that its agent's actions regarding Moncada were contrary to Smith's good faith efforts to prevent discrimination in the workplace.

[34] *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999) (a Title VII case).

the district court laid out the law of this case, it got it right. The isolated introductory reference to Smith as the defendant does not rise to the level of plain error.[35]

*2. Evidence That Ray Acted with Malice or Reckless Indifference*

Smith argues that the jury only had evidence that Smith, not Ray, was aware of the ADA's prohibitions, and so Ray could not have had the intent that would justify punitive damages. Because Smith did not assert this claim in its pre-verdict motion for judgment as a matter of law, this Court reviews for plain error.[36] Under that inquiry, this Court will uphold a verdict "[i]f any evidence exists that supports the verdict."[37]

The jury did have evidence that Ray was aware of the ADA. Although Smith's highest-ranking employee testified that Smith had never held a training on the ADA, he also testified that workplace discrimination was discussed at Smith's semi-annual managers' meetings. Ray was a manager at all times during his employment. The jury could infer from those facts that Ray had knowledge of the ADA, which is sufficient to satisfy the plain error standard.

*3. Evidence That Ray Was Employed in a Managerial Capacity and Acted Within the Scope of That Employment*

Punitive damages are "available against a principal only when, *inter alia*, an agent employed in a managerial capacity acts in the scope of employment."[38] Smith questions the sufficiency of the evidence that it employed Ray in a

---

[35] *See generally Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 350 (5th Cir. 1989) ("A trial court is accorded substantial latitude in fashioning jury instructions and if, considering the totality of a charge, the instructions are 'comprehensive, balanced, fundamentally accurate, and not likely to confuse or mislead the jury, the charge will be deemed adequate.'" (quoting *Bode v. Pan Am. World Airways, Inc.*, 786 F.2d 669, 671-72 (5th Cir. 1986)).

[36] *See Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229, 238 (5th Cir. 2001).

[37] *Id.*

[38] *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 282 (5th Cir. 1999) (a post-*Kolstad* Title VII case).

managerial capacity and that Ray acted within the scope of his employment when he refused to consider Moncada. It argues that Ray had no discretion to decide who would be allowed to apply for a position, which was the "operative discriminatory act, not any failure to hire."

We review de novo the district court's denial of Smith's motion for judgment as a matter of law, but the standard with respect to a jury verdict is "especially deferential."[39] Reversal is warranted only if "'no reasonable jury could have arrived at the verdict.'"[40]

With regard to managerial capacity, "'[u]nfortunately, no good definition of what constitutes a "managerial capacity" has been found.'"[41] In deciding whether an employee serves in a managerial capacity, courts consider "'the type of authority that the employer has given to the employee, the amount of discretion that the employee has in what is done and how it is accomplished.'"[42]

Smith's highest-ranking employee, Joe Roberts, testified that Ray was the account manager when Moncada sought employment. Roberts also testified that account managers have the authority to make hiring decisions and are the immediate supervisors for employees working for Smith's clients. From Roberts's testimony, the jury could reasonably have found that Ray had the authority to hire and supervise employees and was therefore acting in a managerial capacity.

---

[39] *Brown v. Bryan Cnty., Okla.*, 219 F.3d 450, 456 (5th Cir.), *reh'g denied*, 235 F.3d 944 (5th Cir. 2000), *cert. denied*, 532 U.S. 1007 (2001).

[40] *Rogers v. McDorman*, 521 F.3d 381, 391 (5th Cir. 2008) (quoting *Miss. Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 365 (5th Cir. 2002)).

[41] *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 543 (1999) (quoting 2 JAMES D. GHIARDI & JOHN J. KIRCHER, PUNITIVE DAMAGES: LAW AND PRACTICE § 24.05 (1998)).

[42] *Id.* (quoting 1 LINDA L. SCHLUETER & KENNETH R. REDDEN, PUNITIVE DAMAGES § 4.4(B)(2)(a) (3d ed. 1995)).

Smith also challenges the sufficiency of the evidence that Ray was acting within the scope of his employment when he refused Moncada's attempt to apply for a job, arguing that Ray acted in violation of a Smith policy[43] and therefore not within the scope of his employment. But misapplying a claimed policy is not necessarily a bar to finding that an employee acted within the scope of his employment.[44] Courts look to whether the act is of the kind the employee is employed to perform, whether the discrimination occurred substantially within authorized time and space limits, and whether the act was actuated, at least in part, by a desire to serve the employer.[45] The evidence demonstrates that Ray's job duties as account manager included hiring employees, and a reasonable jury could find that blocking someone from entering the applicant pool, while on the job, is within the scope of that duty, even if it violates a Smith policy.[46]

*4. Excessiveness*

The district court suggested, and the EEOC accepted, a remittitur of the jury's punitive damages award. The remittitur reduced the award from $150,000 to twice the compensatory damages and back pay, $68,800. Smith now argues that "the award of remitted punitive damages is still excessive, given the non-egregious nature of this one isolated incident."

---

[43] Roberts testified at trial that Smith's policy is to give an application to anyone seeking one, unless that person has a felony conviction.

[44] *See Kolstad*, 527 U.S. at 544.

[45] *See id.* at 543.

[46] We note that *Kolstad* recognized a good-faith exception that Smith does not argue should apply here. Under *Kolstad*, "liability [for punitive damages] may *not* be imputed when the managerial agent's within the scope actions are 'contrary to the employer's good faith efforts to comply with'" the antidiscrimination law at issue (in that case, Title VII). *Deffenbaugh-Williams*, 188 F.3d at 282 (quoting *Kolstad*, 527 U.S. at 545); *see also Rubinstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 405 (5th Cir.) (recognizing the exception in another Title VII case), *reh'g en banc denied*, 232 F.3d 212 (5th Cir. 2000), *cert. denied*, 532 U.S. 937 (2001). Because Smith did not make this argument, we consider it waived. *See Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 960-61 (5th Cir. 2012) (per curiam).

This Court reviews the grant of a remittitur for abuse of discretion,[47] and "[w]here the trial court already has invoked its discretion in granting a remittitur, our scope of review is even narrower than usual."[48]

The district court engaged in a careful and thorough analysis of this issue, examining (1) the degree of reprehensibility of Smith's conduct, (2) whether the punitive damages bore a reasonable relationship to the compensatory damages awarded, and (3) how the punitive damages award in this case compared to awards in similar cases.[49] The district court's analysis is considered, fair, and in no way an abuse of discretion.

## VI.

Smith makes three challenges to the district court's imposition of injunctive relief: (1) that the district court erred as a matter of law by placing a burden of proof on Smith to demonstrate "by clear and convincing evidence that there is no reasonable probability that it will violate the ADA in the future," (2) that there was an "absence of any evidence" to support the EEOC's request for injunctive relief, and (3) that the relief granted exceeded the EEOC's request and "makes both compliance and enforcement unreasonably difficult."

This Court reviews the first challenge de novo.[50] Smith does not dispute that "the question of whether to award injunctive relief is generally within the trial court's discretion," but it maintains that it should not have borne the burden of showing, essentially, that it would not violate the ADA in the future. Smith argues that "[t]he EEOC had the burden to support its request for

---

[47] *See Consol. Cos. v. Lexington Ins. Co.*, 616 F.3d 422, 435 (5th Cir. 2010).

[48] *Stapleton v. Kawasaki Heavy Indus., Ltd.*, 608 F.2d 571, 574 n.7 (5th Cir. 1979).

[49] The court applied the three-factor test for excessiveness from *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 595-96 (5th Cir. 1998), *vacated*, *Williams v. Wal-Mart Stores, Inc.*, 169 F.3d 215 (5th Cir. 1999) (en banc), *reinstated in relevant part*, 182 F.3d 333 (5th Cir. 1999) (en banc).

[50] *See Rathborne Land Co. v. Ascent Energy, Inc.*, 610 F.3d 249, 255 (5th Cir. 2010).

injunctive relief by demonstrating that Smith might again engage in prohibited conduct in the future." Smith makes this argument in the teeth of two Fifth Circuit precedents.[51] In any event, Smith's argument only raises the question whether the district court was *required* to provide injunctive relief, not whether it had the discretion to do so, which it unquestionably did.

Because any burden was on Smith, we need not address Smith's second challenge, that there was an "absence of any evidence" to support the EEOC's request for injunctive relief.

This Court reviews the third challenge—that the relief granted exceeded the EEOC's request and "makes both compliance and enforcement unreasonably difficult"—for abuse of discretion.[52] Smith argues that the district court abused its discretion by requiring it to notify the EEOC, "in perpetuity," of any instance in which an employee complains of disability discrimination. The EEOC had requested a notification requirement that would extend two years past the date of judgment. Although the district court's order did not specify a date on which Smith's reporting obligations would conclude, we do not read the order as extending to the infinite horizon. The EEOC maintains on appeal that a two-year reporting period is appropriate, and to the extent that the district court's

---

[51] *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 354 (5th Cir. 1977) (reiterating the Circuit rule that "absent clear and convincing proof of no reasonable probability of further noncompliance with the law a grant of injunctive relief is mandatory"), *cert. denied*, 434 U.S. 1034 (1978); *EEOC v. Rogers Bros., Inc.*, 470 F.2d 965, 966-67 (5th Cir.) (per curiam) (noting that "we may hold on these facts that injunctive relief is mandatory unless the District Court finds on the basis of clear and convincing proof that there exists no reasonable probability of further noncompliance," and specifying further that "[t]he burden of negating that probability lies with the defendants"), *cert. denied*, 409 U.S. 1059 (1972).

[52] *See McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 283 (5th Cir.) ("We review a district court's fashioning of injunctive relief for abuse of discretion."), *cert. denied*, 555 U.S. 881 (2008).

order left the time period unclear, we clarify that the requirement terminates two years from the date of judgment.[53]

## VII.

We AFFIRM the district court in full, its reporting requirement terminating January 11, 2013, two years from the date of judgment below.

---

[53] Smith also complains that the district court order did not "include any specifics on making the required notification," thereby making "both compliance and enforcement unreasonably difficult." Smith does not point to any authority to substantiate its argument that these alleged deficiencies in the district court's order constitute an abuse of discretion, and we do not find it persuasive.